THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY BLOUNT, Defendant-Appellant.

First District (2nd Division)    No. 80-350

Opinion filed November 3, 1981.

James J. Doherty, Public Defender, of Chicago (Jeffrey R. Martin and Timothy K. McMorrow, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lester M. Joseph, and Francis J. Mahon, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant was convicted by a jury for unlawful use of a weapon (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a—7)), armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—2), two counts of aggravated battery (Ill. Rev. Stat. 1971, ch. 38, pars. 12—4, 12—4(b—1)), and attempted murder (Ill. Rev. Stat. 1971, ch. 38, par. 8—4). After the verdict was rendered, the trial court granted defendant's motion in arrest of judgment with respect to attempted murder. Defendant was sentenced to 8 to 24 years for armed robbery and 3 to 10 years for unlawful use of a weapon and aggravated battery, to be served concurrently. On appeal, defendant maintains that the trial court committed reversible error when it failed to quash his warrantless arrest and suppress the evidence subsequently seized inside his hotel room. For the reasons enunciated below, we affirm.

The State presented the following case at trial. Officer Harry Radney testified that about 11:30 a.m. on July 20, 1972, while seated at the rear of a clothing store where he was employed as a security guard, he observed defendant and another man enter. After 10 to 15 minutes of browsing, defendant and his accomplice, ultimately identified as George Martin, moved behind a clothes rack and reappeared, wielding guns. Defendant ordered, "Nobody move, this is it," but Radney reached for his revolver under his vest. Martin then shot Radney, who lost consciousness and collapsed. The offenders stole about $500 in cash as well as several articles of clothing.

Investigator Michael Hoke testified that he was assigned to investigate the shooting incident. He arrested Martin on August 16, 1972, pursuant to his investigation. Defendant, who was with Martin at that time,

was not then arrested. Later that same day during Martin's lineup, defendant came to the police station to inquire about the latter's status with the police. Hoke told defendant that Martin was under arrest for the armed robbery of the clothing store and Radney's shooting. Hoke left defendant to secure Officer Radney who was in the next room; when they returned approximately one minute later, however, defendant was gone.

Hoke stated that at 10 a.m. on August 23, 1972, he and Officer William Wagner, without a warrant, went to a hotel on East 67th Place and knocked on the door of defendant's room. Defendant "came out of his apartment into the hall and closed the door behind him, at which time I informed * * * [him] that he was under arrest for armed robbery." Standing in just his boxer shorts, defendant asked to reenter his room to dress. They allowed him to do so in their company. Inside, they found and seized a loaded .38-caliber blue steel revolver in plain sight on top of the dresser and defendant's pants. The pants were similar to those sold at the clothing store in that they lacked zippers and buttons, except that their label had been cut out. When defendant started to reach under the bed for his shoes, they observed and confiscated a sawed-off shotgun nine or 10 inches long.

The parties stipulated that the blue steel revolver found in defendant's room was the weapon employed by Martin to shoot Officer Radney during the armed robbery.

As its only witness, the defense called Officer Radney to testify, who stated that prior to the incident he did not know defendant or his friend and that he provided the investigating officers with a description of the offenders while in the hospital.

Certain testimony was adduced at the evidentiary hearing on defendant's motion to quash his arrest and suppress evidence which will also be set forth here in furtherance of a complete understanding of defendant's arguments on appeal. At that hearing, Officer Wagner testified that he was assigned to investigate the robbery and shooting. A witness had provided the police with the license number of the vehicle used by the offenders. A license check revealed that one Herman Holmes was the registered owner. On August 17, 1972, Holmes informed the officers that he had loaned the car to Martin on July 20; that defendant informed him that he participated in the incident; and defendant requested Holmes' assistance in moving stolen clothing from his room. Wagner's testimony concerning the circumstances of defendant's arrest and subsequent search of his room is substantially consistent with that given by Investigator Hoke.

Also at the evidentiary hearing on defendant's motion to suppress, defendant testified that Officers Hoke and Wagner knocked down his apartment door between 6:30 and 7 a.m. on August 23, 1972, while he was

still in bed with his girlfriend. Hoke pointed a gun at his head telling him he was under arrest. Wagner handcuffed him and took him out into the hallway although he was dressed only in his shorts, and then searched his room. Defendant denied knowing Holmes, or having a conversation with him, or being with Martin when the latter was arrested on August 16, 1972.

Defendant contends that under *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, his warrantless arrest and the subsequent search of his room was constitutionally improper, and he seeks a new trial. We disagree. The *Payton* court held that the fourth amendment prohibited the police from nonconsensual and warrantless entries into a suspect's home for purposes of effectuating a routine felony arrest. Its decision was founded on the premise that the fourth amendment was primarily intended to protect the sanctity and privacy of the home from physical invasions by the police. (445 U.S. 573, 589, 63 L. Ed. 2d 639, 652, 100 S. Ct. 1371, 1381.) The court held that the paramount determinant is whether the intrusion physically occurs within the home not whether the intrusion is in the form of a search or an arrest:

> "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." (445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382.)

Recently, the Illinois Supreme Court in *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543, held that the *Payton* holding has always been judicially engrafted onto the Illinois arrest statute. Ill. Rev. Stat. 1979, ch. 38, pars. 107—1 through 107—14.

■■ Defendant's reliance on *Payton* is misplaced, because, according to the testimony of the officers, the arrest did not take place in defendant's home. The "firm line" drawn by the fourth amendment at the entrance of defendant's home was never crossed by the officers. Defendant's arrest physically took place in the hotel corridor outside rather than inside defendant's room. A hotel corridor is no more a constitutionally protected area than a hallway situated in an apartment building. (*People v. Miller* (1975), 30 Ill. App. 3d 643, 644, 332 N.E.2d 440; *People v. Carroll* (1973), 12 Ill. App. 3d 869, 876, 299 N.E.2d 134, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1144, 94 S. Ct. 3180.) The door to defendant's room was closed at the time of arrest. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 165, 368 N.E.2d 870; *People v. Clark* (1956), 9 Ill. 2d 400, 404, 137 N.E.2d 820.) In determining that the arrest of defendant occurred outside of his home, it is entirely proper for the court to consider the trial testimony of witnesses in addition to evidence adduced at the pretrial hearing on a motion to suppress. (*People v. Conner* (1979), 78 Ill. 2d 525, 532, 401 N.E.2d 513; *People v. Braden* (1966), 34 Ill. 2d 516, 520, 216 N.E.2d 808; *People v.*

*Cowan* (1971), 1 Ill. App. 3d 601, 602-03, 274 N.E.2d 683.) The arrest of the defendant outside of his home was lawful because, as counsel for the defendant concedes, the officers had probable cause on the basis of Holmes' statement that defendant admitted participating in the incident and on their own dealings with the defendant at the time of Martin's arrest and later at the police station. Ill. Rev. Stat. 1979, ch. 38, par. 107—2(b); *People v. Lawson* (1976), 36 Ill. App. 3d 767, 770, 345 N.E.2d 41.

■■ The resulting search of defendant's room also complied with the fourth amendment as a search incident to a lawful arrest. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356.) The police officers were fully justified in following the defendant back into his room incident to his lawful arrest and in accordance with his request to reenter, since they could have reasonably concluded that the defendant should not be left out of sight where he might obtain a deadly weapon or attempt to escape. Once inside defendant's room, the police acted properly when they confiscated the loaded revolver which was clearly visible on the dresser, retrieved the shotgun from under the bed as defendant reached for his shoes, and searched the articles of clothing defendant selected to wear, because all the items seized were either within plain view or the area of defendant's immediate control.

We conclude that the arrest of the defendant and the subsequent search of his abode were constitutionally permissible.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.