THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARK DAVID OLSON *et al.*, Defendants-Appellees.

Second District   Nos. 2—89—0231 through 2—89—0233 cons.

Opinion filed June 12, 1990.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Colleen M. Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Defendants, Mark David Olson, David Brian Fontani and Karla Rose Woodward, were each charged in the circuit court of Kane County with unlawful possession of less than 15 grams of a substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1402), unlawful use of weapons (Ill. Rev. Stat. 1987, ch. 38, par. 24—1), and possession of a firearm without a firearm owner's identification card (Ill. Rev. Stat. 1987, ch. 38, par. 83—2), arising out of the same incident on October 14, 1988. Defendants Fontani and Woodward filed a joint motion to suppress evidence, and, following an evidentiary hearing on

the motion, the circuit court granted the motion to suppress. Subsequently, the State and defendant Olson stipulated to the findings and rulings on the codefendants' motion to suppress, and the evidence was suppressed as to Olson as well. The State filed certificates of impairment as to each defendant and appeals pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)). The appeals have been consolidated in this court.

Two issues are raised on appeal: (1) whether defendants Fontani and Olson lacked standing to challenge the search; and (2) whether the search was constitutional.

The following pertinent evidence was adduced at the suppression hearing for Fontani and Woodward. On October 14, 1988, at between 1:30 and 2 a.m., Officer Randy Johnson of the North Aurora police department, while on patrol, observed a black vehicle that had been driving around in the parking lot of the Saratoga Hotel. About two hours later he observed the same vehicle parked at the Days Inn Hotel. No one was in the car. He ran a license check which disclosed that Fontani was the registered owner. He further found out that Fontani was wanted on an outstanding residential burglary warrant in Kendall County. Fontani was not registered at the hotel, but eventually Johnson determined Fontani was in a room registered to Betty Woodward. He had seen a number of people entering and leaving Woodward's room, called that room asking for "David Fontani," and was told Fontani was there. Johnson hung up upon hearing the response that Fontani was there.

Johnson, who was in uniform, joined by two other uniformed police officers and a third officer in plain clothes, went to Woodward's room, knocked on the door and announced it was hotel security. Defendant Karla Woodward answered and, upon the officers' asking if "David" was there, said "Yes, he's in bed." The officers could not see the bed because Woodward was standing with the door up against her. She then turned around and started walking back into the room, and the officers then entered the room through the door, which was open two or three feet, without asking permission. Woodward walked toward the bed where defendant Fontani was. Fontani, who was in his underwear, was in the bed closest to the front door and appeared to be sleeping. Officer Johnson went directly to Fontani and handcuffed him. A 15-year-old female juvenile, L.M., was in the other bed with defendant Olson. They were under the covers sleeping or apparently sleeping. The officers had the others sit on the edge of the beds. Officer Johnson believed the lights were on in the room when they entered.

The testifying officers described the hotel room as approximately 12 feet by 12 feet. A bathroom is to the immediate right upon entry into the room, and the bedroom begins at the end of a short hallway from the front door. There were two beds with a desk and nightstand between the beds.

After Fontani was handcuffed, Officer Johnson observed two plastic baggies and a small amount of a white powdery substance on them in the sink in an adjoining bathroom. Johnson, who had some training in narcotics detection, believed the baggies might have contained cocaine. These articles were only observed and never seized. Johnson then went back near the front door and found a 9mm Smith & Wesson pistol under some clothes which completely covered the pistol. The pistol was not more than five feet from where Fontani was lying on the bed. Other clothing was all over the room.

Officer Raymond Treve, who was one of the other uniformed officers entering the room with Johnson and was working off duty as a security officer at the hotel that evening, testified that, after Fontani's arrest, he began a search of the room for weapons or drug paraphernalia. Treve also testified that the search of the area within the immediate reach of an arrestee is for security purposes. Treve opened the desk drawer and found a plastic bag with some powdery substance in it which was determined to be cocaine following a field test. This substance was seized prior to the discovery of the pistol by Officer Johnson. A mirror containing white residue was also found on a table by Officer Johnson and was seized.

The four individuals in the room were removed to a police van. Officer Johnson later reentered the hotel room to look for more narcotics but found none.

L.M. testified that Mrs. Woodward rented the room because she and her daughter, Karla, were evicted from their home and Karla needed a place to stay. Mrs. Woodward was not staying there. L.M. was asleep in bed with her boyfriend, Mark Olson, when the police came in and shined a flashlight in her face.

Mrs. Betty Woodward testified that, following their eviction, her 17-year-old daughter, Karla, was living "on the street" and did not live with her anymore. During that time she had rented a room at different motels for Karla on three occasions. She rented a room for Karla at the Days Inn the day before and the day Karla and the others were arrested. She signed the register for the room.

Following arguments in which the issue of standing for Fontani and Karla Woodward was raised by the State, the trial court found on February 10, 1989, that both defendants had standing to contest the

search and seizure. The court further found that the police officers had no right to go into the room, that they were not invited in, and that the occupants had a reasonable expectation of privacy in the room. Finally, as to the seizure of the pistol and the cocaine in the desk drawer, the court stated the officers were looking for those articles and there was no reason for them to do so. Defendants' motion to suppress was granted.

On March 7, 1989, counsel for defendant Olson and the State stipulated as to the findings of the trial court in the codefendants' suppression hearing and to the granting of a motion to suppress. No motion to suppress by Olson appears in the record. During the brief discussion between counsel prior to the stipulation, defendant Olson's attorney stated he might want to supplement the record as to his client because he was not present at the suppression hearing and might wish to present evidence as to where Olson was in the room, what was happening, and whether he was involved in renting the room. However, no further proceedings were undertaken by Olson.

We address first the State's contention that Fontani and Olson did not meet their burden of establishing standing to challenge the search. In this regard, the State maintains that Fontani and Olson did not show any legitimate expectation of privacy in the hotel room rented by defendant Woodward's mother. The State argues that the evidence does not demonstrate that they "stayed" overnight in the room.

The defendants Fontani and Olson jointly contend that the evidence shows that all the occupants of the hotel room were staying there, had dispersed their personal property throughout the room, and had a reasonable expectation of privacy therein. Olson additionally maintains that the hearing on the suppression motion was held exclusively as to defendants Woodward and Fontani and that his standing was not litigated, particularly where he was given the opportunity to supplement the proceedings, if he chose to do so, and the State's filing of a notice of appeal prevented him from following through with the supplementation of the record.

■ On a motion to suppress evidence, the burden of proof is on the defendant to establish that the search and seizure were unreasonable. (Ill. Rev. Stat. 1987, ch. 38, par. 114—12(b); *People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898.) Defendant bears the burden of establishing that he has a reasonable expectation of privacy in the premises at the time it was searched. (See *People v. Johnson* (1986), 114 Ill. 2d 170, 192, 499 N.E.2d 1355.) A reviewing court will not disturb a trial court's determination on a motion to suppress evi-

dence unless it is manifestly erroneous. *Neal*, 109 Ill. 2d at 218, 486 N.E.2d at 899.

As to the standing issue, we are guided by the recent decision of the Supreme Court in *Minnesota v. Olson* (1990), 495 U.S. ___, 109 L. Ed. 2d 85, 110 S. Ct. 1684, wherein the standing of the accused to challenge the legality of his arrest while an overnight guest in another's home was at issue. The Court initially set forth the established rule that "it has been the law that 'capacity to claim the protection of the Fourth Amendment depends *** upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place,' " quoting *Rakas v. Illinois* (1978), 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430. (*Olson*, 495 U.S. at ___, 109 L. Ed. 2d at 92, 110 S. Ct. at 1687.) The Supreme Court further rejected a series of factors suggested by the State which, in the State's view, would determine whether a dwelling is a "home" in establishing the relationship of the accused to the premises. (*Olson*, 495 U.S. at ___, 109 L. Ed. 2d at 93, 110 S. Ct. at 1688.) Instead, the Court stated that it need go no further than to conclude that "Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." (*Olson*, 495 U.S. at ___, 109 L. Ed. 2d at 93, 110 S. Ct. at 1688.) The Court emphasized that its holding merely recognizes the everyday expectations of privacy a person shares in an overnight stay, whether it be a hotel room or friend's home, where a house guest and his possessions will not be disturbed by anyone but his host and those his host allows inside. *Olson*, 495 U.S. at ___, 109 L. Ed. 2d at 93, 110 S. Ct. at 1688; see also *People v. Eichelberger* (1982), 91 Ill. 2d 359, 364-65, 438 N.E.2d 140 (residents of a hotel are accorded the same constitutional protections against unreasonable searches as are enjoyed by residents of private homes in Illinois).

■ While *Minnesota v. Olson* did not reach the precise issue presented here, whether an overnight guest in a hotel room registered to another has a legitimate expectation of privacy therein, we believe that case is applicable here as the fourth amendment applies equally to hotel rooms and private residences. (See *Eichelberger*, 91 Ill. 2d at 364-65, 438 N.E.2d at 142.) Applying the rationale in *Minnesota v. Olson* to the instant case, we conclude that both Fontani and Olson, as overnight guests in Karla Woodward's hotel room, have a legitimate expectation of privacy in the premises entered. The limited evidence on these defendants' stay at the hotel room is that at about 3:30 to 4 a.m., when the police entered the hotel room, Olson was in

one bed sleeping with a 15-year-old girl and Fontani, in his underwear, was sleeping in a second bed. The hotel room was rented by Mrs. Betty Woodward for her 17-year-old daughter, defendant Karla Woodward, for the day in question and the previous day because Karla was without a permanent place to stay. While the State disputes that this evidence shows Fontani and Olson were staying at the hotel room, we find that argument not well taken in light of the time of night and the defendants' location in bed, sleeping or apparently sleeping, when the police entered. Under these facts, we find both Fontani and Olson to be overnight guests in the hotel room, and therefore they had a reasonable expectation of privacy in the room for which they had standing to claim the protection of the fourth amendment.

The next contention by the State is that the police officers lawfully entered the hotel room because they were executing an arrest warrant for Fontani and, once inside the room, observed evidence of criminal activity in plain view when bags with a white powdery substance were seen in the bathroom sink which gave them probable cause to search the premises under "exigent circumstances." All three defendants, Fontani, Olson and Woodward, argue that the police were not legitimately on the premises because they failed to inform the occupants who they were and why they were there in violation of the "knock and announce" rule. They further maintain that the plain-view doctrine asserted by the State is inapplicable under the facts of this case.

We agree with the State and the defendants that the initial issue is whether the police lawfully entered the hotel room.

The State has not contended that the entry into the hotel room was justified on Karla Woodward's consent or upon exigent circumstances. Rather, the State maintains that the entry was reasonable because the officers were executing a felony arrest warrant for Fontani and they announced who they were and for whom they were inquiring.

Initially, we observe that the hotel room here was rented for Karla Woodward and the police entry into this room was clearly to arrest Fontani. Thus, our first concern is whether the police conducted a search of Woodward's room for Fontani without a search warrant thereby invading the privacy interests of Woodward and Olson. (See *Steagald v. United States* (1981), 451 U.S. 204, 68 L. Ed. 2d 38, 101 S. Ct. 1642.) We do not perceive, however, that the police undertook a search of the room for Fontani as Woodward answered the door by opening it, told the police that Fontani was in bed and turned and

walked toward the bed, and the police merely walked a short distance directly to the bed in which Fontani was. Under these circumstances, there was no search for Fontani, and we need not be concerned with the privacy interests of Woodward or Olson which a search of the room would necessarily have implicated. (See *Steagald v. United States* (1981), 451 U.S. 204, 68 L. Ed. 2d 38, 101 S. Ct. 1642.) Thus, we need only address the propriety of the manner of the police entry into the room.

■ In this regard, the defendants argue the entry was unreasonable because the police, although they knocked on the door, failed to announce their authority and purpose in compliance with the knock-and-announce rule. It is now well established that, although the failure of law enforcement officers to announce their authority and purpose prior to entering a dwelling is not necessarily a constitutional violation, the presence or absence of such an announcement is an important consideration in determining whether subsequent entry to arrest or search is constitutionally reasonable. (*People v. Saechao* (1989), 129 Ill. 2d 522, 531, 544 N.E.2d 745; *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 166, 370 N.E.2d 1067.) The function of the requirement to announce authority and purpose is to notify the person inside of the presence of police and to afford the person an opportunity to respond, so that violence can be averted and privacy protected. *Wolgemuth*, 69 Ill. 2d at 166, 370 N.E.2d at 1073.

Here, the police, one of whom was a security officer at the hotel, knocked on the hotel room door and indicated they were hotel security. Several of the officers were in police uniform, making it obvious to Woodward who they were. When Woodward opened the door, the officers asked for Fontani, and Woodward indicated he was in bed. She then walked away, leaving the door open. Although there was a short hallway leading into the room, the beds were only a short distance from the door. The officers walked in and went directly to the bed where Fontani was lying. No force was used to gain entry into the room.

■ Under such circumstances, we believe the entry without force by the police, who had knocked on the door, whose authority was readily apparent by the announcement that they were security and by their uniforms, and who had given a general statement of their purpose in asking for Fontani, was reasonable under the fourth amendment, notwithstanding their failure to state they were there to arrest Fontani in strict compliance with the announcement of purpose portion of the knock-and-announce rule.

Upon entering the room, the officers went directly to Fontani and

placed him under arrest. The police then conducted a search in which they found a 9mm pistol under a pile of clothes no more than five feet from defendant, a plastic baggie with white powdery substance in a drawer of the desk located between the two beds, and a mirror with a white powdery substance on a table next to the south wall of the room. We must next decide whether the seizure of each of these items was the result of a proper search under the fourth amendment.

■ In *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, the Supreme Court defined the proper scope of a search incident to a lawful arrest as the area "within [an arrestee's] immediate control." (395 U.S. at 763, 23 L. Ed. 2d at 694, 89 S. Ct. at 2040.) The area within the immediate control of the arrestee means that area from within which an arrestee might gain possession of a weapon or destructible evidence. 395 U.S. at 763, 23 L. Ed. 2d at 694, 89 S. Ct. at 2040.

■ Under the *Chimel* doctrine, it is clear that the search under the pile of clothes was reasonable. The clothes were located no more than five feet from the defendant Fontani, a distance from which he could readily obtain a weapon or reach evidence. Furthermore, Fontani was clothed only in his underwear and presumably may have been required to reach into the pile to obtain clothing and have his handcuffs removed to allow him to dress before being removed by the police. See *People v. Blount* (1981), 101 Ill. App. 3d 443, 447, 428 N.E.2d 621.

■ As to the search into the desk drawer, the desk was located between the two beds where Fontani could have easily reached to grab a weapon or destroy evidence. Searching a drawer is proper if it is located in an area within the immediate control of an arrestee. (See *Chimel*, 395 U.S. at 763, 23 L. Ed. 2d at 694, 89 S. Ct. at 2040; see also *People v. Doss* (1970), 44 Ill. 2d 541, 547-48, 256 N.E.2d 753 (search under motel room bed occupied by arrestee at time of arrest proper under *Chimel*).) Here, the desk was within the immediate control of Fontani as it was located between the two beds, and the search of the desk drawer was therefore valid as a search incident to a lawful arrest.

Defendants argue, relying on *People v. Robbins* (1977), 54 Ill. App. 3d 298, 369 N.E.2d 577, that the search of the desk drawer was not a proper search incident to a lawful arrest because Fontani was handcuffed at the time of the search. While *Robbins* does hold that the search of a closed dresser drawer exceeded the permissible scope of a search incident to a lawful arrest where the arrestee was handcuffed, we decline to follow that decision. The Illinois Supreme Court in *Peo-*

*ple v. Hoskins* (1984), 101 Ill. 2d 209, 461 N.E.2d 941, and in *People v. Perry* (1971), 47 Ill. 2d 402, 266 N.E.2d 330, held a search incident to a lawful arrest to be valid under *Chimel* notwithstanding that the arrestee was handcuffed. We also do not interpret *Chimel* as supporting such an exception to its doctrine as the opinion nowhere refers to the fact of an arrestee's being handcuffed as being relevant to whether a search is of an area within the immediate control of an arrestee.

Furthermore, in *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, and in *New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, the Court applied the *Chimel* doctrine to situations where the arrestee was in full custodial arrest and under close control of the police in holding that the search of the person (*Robinson*) and the search of the passenger compartment (*Belton*) were proper.

Because we do not interpret *Chimel* or its Supreme Court progeny to prohibit a search incident to a lawful arrest where the arrestee is handcuffed, we will follow our supreme court in *Hoskins* and *Perry* and hold that the search of the desk drawer was within an area of Fontani's immediate control and was valid as incident to the lawful arrest of Fontani.

■ Finally, as to the mirror on the table, we believe its seizure was reasonable under the plain-view doctrine. Officer Johnson, with his narcotics training, had probable cause to believe the mirror and the white powdery substance thereon were evidence of drug use or possession. Accordingly, it was reasonable, under the plain-view doctrine, for the officers to have seized the mirror and the white powder. See *Arizona v. Hicks* (1987), 480 U.S. 321, 326, 94 L. Ed. 2d 347, 355, 107 S. Ct. 1149, 1153-54.

■ For the foregoing reasons, we hold that the search and seizure of the 9mm handgun, the plastic bags and cocaine, and the mirror and cocaine to be proper under the fourth amendment. Although the State argued on appeal a different basis to justify the search, the defendant briefed the search incident to an arrest point as it had been advanced by the State in the circuit court. Accordingly, we choose to decide the issue for the reasons stated above. *Cf. Hux v. Raben* (1967), 38 Ill. 2d 223, 224-25, 230 N.E.2d 831.

The order of the circuit court of Kane County suppressing the evidence is reversed.

Reversed.

GEIGER and DUNN, JJ., concur.