852 A.2d 1150 (2004)
371 N.J. Super. 286
STATE of New Jersey, Plaintiff-Respondent,
v.
Hason CLEVELAND, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 26, 2004.
Decided July 22, 2004.
*1152 Yvonne Smith Segars, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).
Peter C. Harvey, Attorney General, attorney for respondent (Daniel I. Bornstein, Deputy Attorney General, of counsel and on the brief).
Before Judges KESTIN, WINKELSTEIN and LARIO.
*1151 The opinion of the court was delivered by KESTIN, P.J.A.D.
A five-count indictment charged defendant, Hason Cleveland, also known as John Yera, with third-degree possession of heroin and cocaine, contrary to N.J.S.A. 2C:35-10a(1) (count one); third-degree possession of heroin with intent to distribute, contrary to N.J.S.A. 2C:35-5b(3) (count two); second-degree possession of heroin with intent to distribute while within 500 feet of a public park, contrary to N.J.S.A. 2C:35-7.1 (count three); third-degree possession of cocaine with intent to distribute, contrary to N.J.S.A. 2C:35-5b(3) (count four); and second-degree possession of cocaine with intent to distribute within 500 feet of a public park, contrary to N.J.S.A. 2C:35-7.1 (count five). A co-defendant, Ebony Brown, was also named in the indictment.
Defendant subsequently moved to suppress the evidence on which the indictment was predicated. Following a hearing, the *1153 motion judge reserved decision, eventually denying the motion for reasons expressed in an oral opinion.
Thereafter, defendant entered a conditional plea of guilty to count five of the indictment. In exchange for the plea, the State had agreed to dismiss the remaining charges. The plea agreement did not call for a sentencing recommendation from the State, leaving the sentence "open ended." The trial court sentenced defendant to a five-year term of imprisonment, to be served concurrently with a sentence defendant was to receive for a criminal matter then pending against him in New York. The trial court also suspended defendant's driving privileges for six months and ordered payment of the penalties, fees and assessments provided by statute.
On appeal, defendant raises a single issue:
DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE SHOULD HAVE BEEN GRANTED BECAUSE THE POLICE OFFICERS' ENTRY INTO THE ROOM OCCUPIED BY DEFENDANT WITHOUT A SEARCH WARRANT CONSTITUTED AN ILLEGAL SEARCH AND SEIZURE PURSUANT TO THE NEW JERSEY CONSTITUTION.
The pertinent facts as found by the trial court were adequately supported by the evidence developed at the suppression hearing, commanding our deference. See State v. Locurto, 157 N.J. 463, 470-72, 724 A.2d 234 (1999); State v. Johnson, 42 N.J. 146, 160-62, 199 A.2d 809 (1964); State v. Watson, 261 N.J.Super. 169, 177, 618 A.2d 367 (App.Div.1992), certif. denied, 133 N.J. 441, 627 A.2d 1145 (1993). Other background facts are essentially undisputed.
Sometime in early November 2000, the Asbury Park Police Department learned that defendant had an outstanding parole arrest warrant in New York, relating to his involvement in a shooting incident. A few days thereafter, Patrolman Phillip J. Montgomery received information from a confidential informant regarding defendant's location.
The informant called Montgomery at about 7:55 a.m. on November 7, 2000, reporting that defendant was "staying" with a womanlater identified as Ebony Brownat the Sterling Inn in Asbury Park. According to this confidential source, the two were sleeping in room 304 at the time of the call. Montgomery understood from the informant that Brown was the room's "legal tenant." The informant also related that defendant had been selling drugs at the Inn and was in possession of a gun.
Montgomery testified that he was familiar with both defendant and the Sterling Inn. He described the Inn as a haven for drug dealers and stated that he had encountered defendant there in the past.
After speaking with the confidential informant, Montgomery and several other officers proceeded to the Sterling Inn to execute the arrest warrant. When they arrived, the informant, who was apparently also renting a room at the Inn, unlocked the front entrance door and permitted the police to enter. Once inside, Officer Ashe headed towards room 304 on the third floor while the remaining officers, including Montgomery, attempted to locate the Inn's management.
Montgomery knocked on the door to the management office, but did not receive a response. Unable to locate any of the Inn's employees, Montgomery decided to join Ashe on the third floor. He discovered Ashe standing near the door to room 304. Montgomery noted that the door was ajar, seemingly because of a malfunctioning lock mechanism. Montgomery testified that, without pushing the door open further, he peered into the room through the five or six-inch opening, and observed *1154 a black male and female sleeping in a bed less than six feet away. Montgomery testified that he immediately identified the black male as defendant.
Accompanied by Ashe, Montgomery entered the room with his gun drawn. He identified himself as a police officer, informed defendant that he was a "wanted fugitive" in New York, and placed defendant under arrest. Montgomery helped defendant don a pair of pants. Before doing so, however, he searched the pants and found $1086 inside one of the pockets. Another officer then escorted defendant from the room.
Montgomery also noticed several contraband items in plain view on a dresser: a marijuana "blunt," a number of razor blades, and several plastic baggies. After observing these items, Montgomery informed Brown that she was under arrest, too. He then asked Brown for permission to conduct a search of the room, informing her that she could refuse permission. Brown consented to the search. Montgomery noticed a toy that he described as a "pokey man" ball lying on top of the dresser. He looked inside the toy and discovered what was eventually determined to be 9.73 grams of cocaine and 0.32 grams of heroin. Both defendant and Brown were later indicted on the drug charges.
In denying defendant's motion to suppress, the trial court expressly found Montgomery to be a credible witness. On the question whether the police were justified in executing the arrest warrant, the trial court, relying upon our decision in State v. Miller, 342 N.J.Super. 474, 777 A.2d 348 (App.Div.2001), noted the following:
It appears now that there is a two-part standard governing the execution of an arrest warrant in circumstances such as those in Miller. In the absence of consent or exigency an arrest warrant is not lawfully executed in a dwelling unless the officers [ ] executing the warrant have objectively reasonable bases for believing that the person named in the warrant both [resides] in the dwelling and is within the dwelling at the time of the execution of the warrant.
* * *
[Here,] the police had objectively ... reasonable grounds to believe that defendant was actually residing in and was actually in room 304 at the Sterling Inn.
The trial court also concluded that the arrest was justified under the exigent circumstances doctrine. Specifically, the court found that the police could not wait for a search warrant to make the arrest because of the risk that defendant, who was purportedly armed, might abscond from the Inn while the warrant was being obtained and present a serious threat to the community at large.
We concur with the trial court's ultimate determination that the police properly executed the arrest warrant, but disagree with the bases invoked by the trial court to arrive at that conclusion. The facts presented by this appeal are sufficiently dissimilar from those in Miller to warrant a different analysis.
We begin with the basic premise that persons are entitled to remain free from unreasonable governmental searches and seizures. The Fourth Amendment to the United States Constitution, which is applicable to the States through the Fourteenth Amendment, see State v. Ruotolo, 52 N.J. 508, 509 n. 1, 247 A.2d 1 (1968), provides the following:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to *1155 be searched, and the persons or things to be seized.
[U.S. Const. amend. IV.]
The New Jersey Constitution imposes similar limits upon government-sponsored searches and seizures. See N.J. Const. art. I, ¶ 7; State v. Jones, 143 N.J. 4, 12, 667 A.2d 1043 (1995). In the absence of exigent circumstances, consent, or the existence of some other recognized exception, a police officer may not enter a home to search for or seize persons or property without first obtaining a warrant. See Steagald v. United States, 451 U.S. 204, 212, 101 S.Ct. 1642, 1647, 68 L. Ed.2d 38, 45-46 (1981); Parkhurst v. Trapp, 77 F.3d 707, 710-11 (3d Cir.1996); State v. Hill, 115 N.J. 169, 173-74, 557 A.2d 322 (1989); State v. Suazo, 133 N.J. 315, 319-20, 627 A.2d 1074 (1993). The warrant requirement ensures that a neutral magistrate has determined that probable cause for a search or seizure actually exists before the police intrude into the confines of a person's residence. See Jones, supra, 143 N.J. at 13, 667 A.2d 1043.
"[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L. Ed.2d 639, 661 (1980). Yet, absent special circumstances, a police officer cannot search for the subject of an arrest warrant in a home where the subject is merely a visitor without first obtaining a search warrant. See Steagald, supra, 451 U.S. 204, 101 S.Ct. 1642, 68 L. Ed.2d 38 (1981); Miller, supra, 342 N.J.Super. 474, 777 A.2d 348.
Here, the confidential informant notified Officer Montgomery that defendant was "staying" in room 304. Yet, this informant also told Montgomery that Ebony Brownidentified by the confidential informant simply as "E"was the "legal tenant" of room 304, which presumably meant that she, rather than defendant, had rented the room. And, while Montgomery said that he knew defendant frequented the Inn, he had no specific information that defendant resided at the Inn. Moreover, Montgomery had been unable to obtain any information from management concerning defendant's status at the Inn. Montgomery's testimony provided the trial court with no adequate basis to conclude that Montgomery and his fellow officers "had objectively reasonable [ ] grounds to believe that defendant was actually residing in ... room 304." Montgomery's observations can only be seen, at best from the State's point of view, as confirming that defendant was a visitor in Brown's room.
Although we must defer to the trial court respecting the factual findings underpinning its determination, we owe no deference to the determination itself. Whether the facts found by the trial court are sufficient to satisfy the applicable legal standard is a question of law subject to plenary review on appeal. See State v. Sailor, 355 N.J.Super. 315, 320, 810 A.2d 564 (App.Div.2001)(quoting Manalapan Realty, L.P. v. Township Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995)("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference")); see also State v. Brown, 118 N.J. 595, 604, 573 A.2d 886 (1990).
Since the record fails to establish that defendant resided in room 304, he contends that Steagald and Miller mandate a reversal of the trial court's decision to deny his motion to suppress because the police illegally entered Brown's motel room without first obtaining a search warrant. We disagree.
*1156 We decide this matter on State law grounds because we doubt that defendant, as the subject of an arrest warrant and seemingly a mere visitor in another person's motel room, has standing to object to the police officers' entry under federal law. See Miller, supra, 342 N.J.Super. at 478, 777 A.2d 348. It is clear, however, that this State's liberal standing requirements do permit defendant to raise such a challenge. Ibid.
Some jurisdictions have perceived a certain illogic in allowing the subject of an arrest warrant to question the legality of a police intrusion into a home where the subject does not reside. See, e.g., United States v. Buckner, 717 F.2d 297, 300 (6th Cir.1983); United States v. Underwood, 717 F.2d 482, 483-84 (9th Cir.1983), cert. denied, 465 U.S. 1036, 104 S.Ct. 1309, 79 L. Ed.2d 707 (1984) ("A person has no greater right of privacy in another's home than in his own"). Since the police could have arrested defendant in his own home based only on an arrest warrant, permitting him to lodge the instant challenge might mean granting him greater protection from police intrusion in Brown's motel room than he would have had in his own residence. Ibid. On the other hand, commentators have described "analyses that would not apply Steagald to the arrestee's claim as `bizarre reasoning [which] would render the Steagald rule a virtual nullity.'" United States v. Weems, 322 F.3d 18, 23 n. 3 (1st Cir.), cert. denied, ___ U.S. ___, 124 S.Ct. 233, 157 L. Ed.2d 167 (2003) (quoting 5 W.R. LaFave, Search and Seizure, § 11.3(b), at 143 (3d ed.1996)). "If individuals are precluded from objecting to warrantless entries and searches of homes by their lack of standing, little incentive remains for law enforcement officers to comply with ... Payton and Steagald." Ibid. (quoting J.D. Harbaugh & N.L. Faust, "Knock on Any Door"Home Arrests After Payton and Steagald, 86 Dick. L.Rev. 191 (1982)).
Refusing defendant an opportunity to assert his challenge would be antithetical to the values intrinsic in our State Constitution, and thus we decline to reach that result. See Miller, supra, 342 N.J.Super. at 478, 777 A.2d 348. In applying State law, we, of course, consider with respectful attention the reasoning processes employed by the United States Supreme Court in similar cases. See, e.g., id. at 484-85, 777 A.2d 348.
Turning to the merits of defendant's position, Steagald involved a confidential informant who provided federal authorities with information about the location of a wanted fugitive. The informant told the authorities that the fugitive, Ricky Lyons, could be reached at a particular telephone number during the next 24 hours. Steagald, supra, 451 U.S. at 206, 101 S.Ct. at 1644, 68 L.Ed.2d at 42.
Federal officers obtained the address associated with the telephone number and proceeded to the location two days later without a search warrant. When they arrived, they encountered two men, Gary Steagald and Hoyt Gaultney, standing outside the residence. Some of the officers frisked the two men and determined their identities; others went to the house to commence the search for Lyons. Gaultney's wife answered the door and informed the officers that she was alone in the house. She was placed under guard while one of the officers searched the residence. Although Lyons was not found, the officer discovered what he thought was cocaine. Another officer then went to obtain a search warrant so that the house could be searched for additional evidence of drugs. Yet, before the search warrant could be obtained, the home was again searched revealing additional inculpatory evidence. Ultimately, a third search, made pursuant to the search warrant, yielded the discovery of a large cache of cocaine on the basis *1157 of which Steagald was eventually indicted. The defendant moved to suppress the evidence found in the house, contending that the indictment was the product of an illegal search. The motion was denied by the trial court and, on appeal to the Fifth Circuit Court of Appeals, the denial was affirmed by a divided court. Id. at 206-07, 101 S.Ct. at 1644-45, 68 L.Ed.2d at 42.
The United States Supreme Court reversed. The Court noted that an arrest warrant and a search warrant serve to protect different interests:
[W]hile an arrest warrant and a search warrant both serve to subject the probable-cause determination of the police to judicial review, the interests protected by the two warrants differ. An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast, is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police.
[Id. at 212-13, 101 S.Ct. at 1648, 68 L.Ed.2d at 46.]
The Court indicated that "most modern commentators agree that a search warrant is necessary to fully protect the privacy interests of third parties when their home is searched for the subject of an arrest warrant." Id. at 207 n. 3, 101 S.Ct. at 1645 n. 3, 68 L.Ed.2d at 43 n. 3. Accordingly, the Court held, while the federal officers could have entered the residence of the subject of an arrest warrant on the strength of the arrest warrant alone, see Payton, supra, 445 U.S. at 603, 100 S.Ct. at 1388, 63 L.Ed.2d at 661, they could not enter the home of another person to search for the subject of an arrest warrant without first procuring a search warrant. See Steagald, supra, 451 U.S. at 214 n. 7, 101 S.Ct. at 1648 n. 7, 68 L.Ed.2d at 46-47 n. 7.
It is clear that the Court's decision in Steagald was motivated by several critical policy considerations:
[W]hile the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect petitioner's privacy interest in being free from an unreasonable invasion and search of his home. Instead, petitioner's only protection from an illegal entry and search was the agent's personal determination of probable cause. In the absence of exigent circumstances, we have consistently held that such judicially untested determinations are not reliable enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant.
[Id. at 213, 101 S.Ct. at 1648, 68 L.Ed.2d at 46.]
The court also observed:
A contrary conclusionthat the police, acting alone and in the absence of exigent circumstances, may decide when there is sufficient justification for searching the home of a third party for the subject of an arrest warrantwould create a significant potential for abuse. Armed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances. See, e.g., Lankford v. Gelston, 364 F.2d 197 (4th Cir.1966) (enjoining police practice under which 300 homes were searched pursuant to arrest warrants for two fugitives). Moreover, an arrest warrant may serve as the pretext for entering a home in which the police have a suspicion, but *1158 not probable cause to believe, that illegal activity is taking place. Cf. Chimel v. California, 395 U.S. 752, 767, 89 S.Ct. 2034, 2042, 23 L. Ed.2d 685, 696 (1969).
[Id. at 215, 101 S.Ct. at 1649, 68 L. Ed.2d at 47.]
Similar considerations informed our decision in State v. Miller, 342 N.J.Super. 474, 777 A.2d 348 (App.Div.2001). There, several parole officers, armed with an arrest warrant, went to arrest the defendant at an address that they believed to be his residence. Upon their arrival, however, the person answering the door told them that the defendant did not reside at that location. Undeterred, the police used threats to gain entry into the premises. They found the defendant in a bedroom, along with marijuana, and arrested him. He was subsequently charged with drug offenses. Id. at 480-83, 777 A.2d 348.
In upholding the trial court's decision to suppress the marijuana found at the scene, we, based on the reasoning in Steagald, articulated a two-part test "[a]s a matter of State law," in the following terms:
[W]e adopt a two-part standard governing the execution of an arrest warrant in circumstances such as those at hand: in the absence of consent or exigency, an arrest warrant is not lawfully executed in a dwelling unless the officers executing the warrant have objectively reasonable bases for believing that the person named in the warrant both resides in the dwelling and is within the dwelling at the time.
[Id. at 479, 777 A.2d 348.]
We held that the trial court had been correct in granting the defendant's motion to suppress because the parole officers did not have a reasonable basis for believing that the defendant lived at the residence. Id. at 500, 777 A.2d 348. We explained the rationale underlying our decision as follows:
[A]n arrest warrant may not be used as a pretext for gaining entry to conduct a search of a third-party's home; and, even if entry is properly gained, the arrest warrant may be used to support a subsequent search only when that search is conducted incident to an arrest lawfully made. The underlying reason for this rule is obvious: the standard for issuing an arrest warrant, and its focal purpose, do not confer the minimum protections which the probable cause standard and special purposes for search warrants provide.
[Id. at 495, 777 A.2d 348.]
This case, however, presents sufficiently different circumstances and policy concerns than were present in Miller to warrant a different result.
After speaking with the confidential informant, Montgomery and the other officers had a reasonable basis for conducting an investigation at the Sterling Inn. See State v. Padilla, 321 N.J.Super. 96, 107, 728 A.2d 279 (App.Div.), certif. denied, 162 N.J. 198, 743 A.2d 850 (1999); State v. Stanton, 265 N.J.Super. 383, 386, 627 A.2d 674 (App.Div.1993). When they reached the location, the informant, who was apparently also a guest at the Inn, unlocked the front door so that the police could enter. Since the police were "`admitted as guests of another tenant ... they [were] legally in the hallways.'" See State v. Nash, 74 N.J.Super. 510, 516, 181 A.2d 555 (Cty.Ct.1962)(quoting McDonald v. U.S., 335 U.S. 451, 458, 69 S.Ct. 191, 194, 93 L.Ed. 153, 160 (1948)(Jackson, J., concurring)); see also United States v. Taylor, 248 F.3d 506, 511-12 (6th Cir.), cert. denied, 534 U.S. 981, 122 S.Ct. 414, 151 L.Ed.2d 315 (2001).
When the officers went to room 304, they were confronted with an open door. While the occupant of a motel room enjoys "a constitutionally protected expectation *1159 of privacy," see State v. Rose, 357 N.J.Super. 100, 103, 813 A.2d 1279 (App. Div.), certif. denied, 176 N.J. 429, 824 A.2d 158 (2003), as any person would in the place he or she resides, when the occupant leaves the interior of the room visible to any of the other guests and visitors who might pass through an adjacent hallway, it is fair to conclude that the expectation of privacy has been abandoned. "[W]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection[,]" see State v. Johnson, 171 N.J. 192, 209, 793 A.2d 619 (2002)(quoting Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L. Ed.2d 576, 582 (1967)), or the like right conferred by the State Constitution. Id. at 209-10, 793 A.2d 619. The hallway adjacent to Brown's room was a public area that could be used by any occupant or visitor. "`[In] multi-occupancy premises ... none of the occupants can have a reasonable expectation of privacy in areas that are also used by other occupants.'" Ibid. (quoting State v. Ball, 219 N.J.Super. 501, 506-07, 530 A.2d 833 (App.Div.1987)). See also United States v. Paradis, 351 F.3d 21, 31 n. 13 (1st Cir. 2003).
When Montgomery looked through the open door leading to Brown's motel room, he was able, readily, to identify one of the occupants as defendant, the subject of the arrest warrant. Montgomery was familiar with defendant because he had met him in the past. Defendant was only about six feet away from the door at the time. Montgomery's observation of defendant did not constitute an unlawful intrusion; he was neither trespassing in the Inn's hallways when he sighted defendant, nor was he looking into the room from an area in respect of which the occupants could claim a reasonable expectation of privacy. See State v. Pineiro, 369 N.J.Super. 65, 71-73, 848 A.2d 39 (App.Div.2004)(discussing plain view doctrine); State v. Stanton, supra, 265 N.J.Super. at 387-88, 627 A.2d 674 (same).
Acting upon his observations, Montgomery and his colleagues entered the room to take defendant into custody pursuant to the lawfully issued arrest warrant. They did not enter Brown's room for the purpose of searching it. A search was not required; defendant's presence was apparent. Cf. United States v. Junkman, 160 F.3d 1191, 1193-94 (8th Cir.1998), cert. denied, 526 U.S. 1094, 119 S.Ct. 1511, 143 L.Ed.2d 663 (1999)(regarding Steagald as distinguishable because police entered third-party's motel room to arrest non-resident, and did not use the arrest warrant as a basis for conducting a search of the premises); People v. Olson, 198 Ill. App.3d 675, 144 Ill.Dec. 806, 556 N.E.2d 273, 277-78 (1990); State v. McKinney, 49 Wash.App. 850, 746 P.2d 835, 838 (1987). But see, e.g., State v. Howard, 75 Ohio App.3d 760, 600 N.E.2d 809 (1991)(holding that police needed a search warrant to enter a third-party's residence to execute an arrest warrant for a non-resident even though no search was necessary because police observed subject through a window).
Montgomery and the other officers were not engaged in a house-to-house search for defendant; nor were they using the arrest warrant as a pretext to search Brown's motel room. Additionally, unlike the law enforcement officials in Miller and Steagald, the police here did not use the threat of force or coercive tactics to gain entry into Brown's motel room.
Nor was the intrusion on Brown's privacy particularly significant. The door to the motel room had been left open, allowing anyone who walked through the Inn's hallways to see inside. The police merely had to step through the open door to arrest defendant, who they saw sleeping only about six feet away. See State v. Cooper, 211 N.J.Super. 1, 20, 510 A.2d 681 (App. Div.1986)("It is worth noting that unlike *1160 Steagald in which the police searched the entire house based on the outstanding arrest warrant, in this case all the police did was fan through the apartment and open the closet door, already ajar, when they had seen someone going into it"). They announced their presence as they entered.
Finally, this is not a situation where an overzealous police officer, confronted with an ambiguous set of facts, can be seen to have made his own probable cause determination, rather than seeking an evaluation by a neutral and objective magistrate. Montgomery's observations gave him far more than probable cause to believe defendant was in room 304; he had direct and actual knowledge of defendant's presence through personal observation. With such knowledge, in the circumstances presented, it was not necessary for Montgomery and the other officers to obtain a search warrant before entering Brown's room to arrest defendant. Considering the existence of the arrest warrant and all the attending circumstances, the risk of an unwarranted intrusion on any privacy interest that Brown might have possessed was insufficient to require the police to obtain a search warrant in addition to the arrest warrant authorizing defendant's seizure that, with the benefit of the confidential source's information, had brought the police to the location. Once in the room, the police observed evidence of drug use in plain view, see, e.g., Johnson, supra, 171 N.J. at 208-20, 793 A.2d 619; and discovered heroin and cocaine after Brown, with adequately administered cautions, had consented to allow the police to search the room. See Suazo, supra, 133 N.J. at 319-20, 627 A.2d 1074. There was no basis for granting defendant's motion to suppress.
Given our conclusion that a search warrant was unnecessary in this situation, we do not reach the issue of whether the police entry could have been justified under the exigent circumstances doctrine.
Affirmed.