**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0287-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GARY J. PASSARELLI, a/k/a
JOSEPH J. POLLIN,

    Defendant-Appellant.

_____

Submitted October 8, 2025 – Decided November 13, 2025

Before Judges Vanek and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Indictment No. 13-11-0388.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Louis H. Miron, Designated Counsel, on the brief).

Renee M. Robeson, Hunterdon County Prosecutor, attorney for respondent (Joseph Paravecchia, First Assistant Prosecutor, of counsel and on the brief; Georgia D. Reid, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Gary J. Passarelli appeals from an order denying his petition for post-conviction relief (PCR). The principal argument raised is that trial counsel rendered ineffective assistance by failing to consult or retain an additional defense expert to support possible diminished capacity or intoxication defenses at trial and suppression of defendant's custodial statement. The PCR court denied relief. We affirm for substantially the reasons in Judge Angela Borkowski's cogent sixty-four-page decision.

## I.

On May 31, 2013, Raritan Township police conducted a welfare check on John Niko. On arrival, officers found Niko dead on the living room floor of his home with a kitchen knife embedded in his abdomen. A set of twenty-five-pound dumbbells lay near Niko's feet, and a children's inflatable swimming pool with a bloody footprint covered his face and chest. The post-mortem examination and investigative findings revealed he had suffered approximately forty stab wounds — including injuries to his feet, hands, chest, arms, and genitals — sustained from the knife found lodged in his abdomen, as well as multiple blunt force injuries to the head inflicted by a dumbbell, resulting in a crushed skull.

A-0287-23

In the investigation that followed, defendant's connection to the scene was supported by witness accounts, threatening voicemails, DNA testing which indicated defendant could not be excluded as a contributor, and defendant's statements to a third-party confessing his involvement. Defendant was arrested, waived his Miranda[1] rights after initially invoking them, and gave a videotaped statement.

In his statement, defendant acknowledged his presence in Niko's home on the date in question and admitted punching him three to five times before leaving. He maintained Niko was not seriously injured but noted two African American men entered the home as he left. This observation led to development of a third-party defense raised at trial.

In November 2013, a Hunterdon County grand jury returned an indictment charging defendant with first-degree murder, N.J.S.A. 2C:11-3a(1)(2); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and third-degree unlawful possession of a controlled dangerous substance (ketamine), N.J.S.A. 2C:35-10(a)(1).

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0287-23

Defendant moved to suppress a statement he made to police after arrest. The court denied defendant's motion in August 2014 and his motion for reconsideration in October 2014.

Originally, defendant filed notice of affirmative defenses for intoxication, self-defense, and diminished capacity. At the final charging conference, however, defendant advised the court he did not wish to pursue those defenses and waived his right to have the judge instruct the jury on those defenses. Instead, consistent with his trial testimony, in which he denied killing Niko, defendant confirmed he wished to proceed with a third-party guilt defense.

Following trial, the jury found defendant guilty on all counts. On February 19, 2016, he was sentenced to an aggregate prison term of sixty years, with an eighty-five percent parole ineligibility term pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On direct appeal, we affirmed the convictions but remanded for resentencing to consider aggravating factors three and nine, N.J.S.A. 2C:44-1(a)(3) and (9). State v. Passarelli, No. A-2932-15T4, 2018 WL 6595928 (App. Div. Dec. 17, 2018). The trial court, on remand, imposed an aggregate sentence of thirty-five years imprisonment subject to NERA. The Supreme Court denied

defendant's petition for certification on May 5, 2020. State v. Passarelli, 241 N.J. 387 (2020).

In July 2020, defendant filed a pro se PCR petition requesting assignment of counsel. Counsel filed an amended PCR petition in June 2021. The PCR judge heard oral argument on August 11, 2023.

Evaluating the substantive claims of ineffective assistance of counsel under Strickland,[2] Judge Borkowski, who was the trial judge, found defendant's trial counsel investigated and made strategic decisions regarding the diminished capacity and intoxication defenses in consultation with defendant. She determined that expert review did not support pursuing either defense. The judge found no evidence the failure to interview witnesses or retain additional experts constituted deficient performance resulting in prejudice. Addressing arguments raised in defendant's supplemental brief, she found no evidence that defense counsel's handling of DNA evidence or cross-examination was unreasonable or harmful. The judge also concluded references to defendant's invocation of counsel during his police interview were fleeting and necessary for context, and not unduly prejudicial considering the overwhelming evidence of guilt.

---

[2] Strickland v. Washington, 466 U.S. 668 (1984).

A-0287-23

The judge concluded defendant failed to establish a prima facie case of ineffective assistance or cumulative error sufficient to warrant an evidentiary hearing or other relief. She issued an order and accompanying decision denying defendant's PCR petition on August 29, 2023.

In denying the petition, the judge concluded none of the alleged deficiencies or tactical decisions of defense counsel undermined confidence in the outcome of the proceeding, nor deprived defendant of a fair trial.

Defendant filed a timely notice of appeal, raising the following arguments:

POINT I

THE PCR COURT ERRED IN RULING THAT DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF COMPETENT TRIAL COUNSEL WHERE COUNSEL FAILED TO CONSULT AND RETAIN AN EXPERT WITNESS TO SUPPORT DEFENDANT'S DEFENSES AFTER THE INITIAL PROSPECTIVE EXPERT COULD NOT RENDER AN OPINION IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS HIS STATEMENT FROM THE CUSTODIAL INTERVIEW AND HIS DEFENSES AT TRIAL.

POINT II

THE PCR COURT ABUSED ITS DISCRETION BY FAILING TO CONDUCT AN EVIDENTIARY HEARING TO ADDRESS THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM CONCERNING COUNSEL'S FAILURE TO RETAIN AN EXPERT RELATING TO THE EFFECT OF

6

DEFENDANT'S USE OF KETAMINE ON HIS ABILITY TO WAIVE HIS MIRANDA RIGHTS DURING THE CUSODIAL INTERVIEWAND HIS DEFENSE OF DIMINISHED CAPACITY AT THE TIME OF THE OFFENSE.

## II.

In considering claims of ineffective assistance of counsel, we are guided by Strickland, 466 U.S. 668, adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987). To prove ineffective assistance of counsel, a defendant must first demonstrate that counsel's performance was deficient. Strickland, 466 U.S. at 687. Performance is deficient when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. "Judicial scrutiny of counsel's performance must be highly deferential," and a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

A claim that trial counsel was ineffective for failure to consult or retain an expert witness requires, under the first prong, a demonstration that such a decision was unreasonable in light of prevailing professional norms and the circumstances of the case. Id. at 690. Mere disagreement with counsel's trial strategy, or hindsight criticism, does not constitute constitutional deficiency.

A-0287-23

Ibid. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable [only] to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690–91.

Next, to show prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

In this context, the second prong mirrors the standard prejudice test. A defendant must present more than bald assertions or conclusory statements. State v. Porter, 216 N.J. 343, 355 (2013). Rather, there must be a proffer or demonstration that the expert's testimony would probably have changed the outcome. Strickland, 466 U.S. at 694.

"Although we must defer to the trial court respecting the factual findings underpinning its determination, we owe no deference to the determination itself." State v. Cleveland, 371 N.J. Super. 286, 295 (App. Div. 2004).

8

"Whether the facts found by the trial court are sufficient to satisfy the applicable legal standard is a question of law subject to plenary review on appeal." Ibid.

Because the PCR court did not conduct an evidentiary hearing, we review its legal and factual determinations de novo. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018) (citing State v. Harris, 181 N.J. 391, 421 (2004)).

Defendant argues trial counsel's handling of potential diminished capacity and intoxication defenses, and, in particular, trial counsel's alleged failure to further retain a competent psychiatric or addiction expert, fell below professional norms. The PCR record establishes that initial trial counsel consulted with a forensic psychologist, Dr. Maureen Santina, who reviewed available materials and interviewed defendant. Dr. Santina found no factual basis to conclude defendant's ketamine use rendered him unable to knowingly waive his Miranda rights or unable to act purposefully or knowingly at the time of the offense. The record reflects trial counsel reviewed the discovery, considered all potential defenses, and elected to focus on a third-party guilt defense.

In denying PCR, Judge Borkowski observed that:

> While it is true that before forgoing a diminished capacity defense an attorney should take investigatory steps, . . . the petitioner admits that his trial counsel did take certain investigatory steps relevant to a potential

diminished capacity defense. Dr. Santina did appraise the defendant's mental condition and the effect of substances on his mental status so that counsel may make a competent strategy decision with respect to a diminished capacity defense. . . . The court is unable to find any caselaw which requires trial counsel to obtain several expert reports until an expert willing to support a diminished capacity defense is found.

We discern no constitutional deficiency in trial counsel's performance. As explained in Savage, 120 N.J. at 617–18, trial counsel may be required to take investigatory steps and, where potentially meritorious, seek and present expert evidence. However, there is no authority requiring counsel to repeatedly seek out experts until finding an expert willing to proffer a favorable opinion. See Porter, 216 N.J. at 353. The record shows counsel reviewed the discovery, consulted with a qualified expert, and made a reasonable, strategic determination — after investigation — not to pursue the defense.

With respect to the prejudice prong, defendant proffered no affidavit or report from any expert suggesting that, contrary to Dr. Santina's assessment, expert testimony would have supported a diminished capacity defense or negated his waiver of Miranda rights. The hospital records showed drug dependency and episodic psychiatric illness but failed to demonstrate ketamine intoxication or mental disease at the relevant time deprived defendant of the capacity to act purposefully or knowingly or rendered his statement involuntary;

10

nor was there evidence that expert testimony to this effect would likely have altered the jury's verdict. See Porter, 216 N.J. at 353; Strickland, 466 U.S. at 694. In this context, we concur in Judge Borkowski's assessment that the records in question "fall far short of the Baum standard, and do not support the conclusion that [defendant]'s ketamine addiction interfered with his cognitive ability sufficient to prevent or interfere with the formation of the requisite intent. His thought process was intact." See State v. Baum, 224 N.J. 147 (2016).

Overall, Judge Borkowski's conclusion squares with authority establishing that reasonable but ultimately unsuccessful trial strategy, including tactical decisions about the utility and risks of seeking out further expert testimony, will not support a PCR claim. See State v. Arthur, 184 N.J. 307, 320 (2005); State v. Chew, 179 N.J. 186, 217 (2004).

To obtain an evidentiary hearing on a PCR application alleging ineffective assistance of counsel, a defendant must make a prima facie showing of deficient performance and actual prejudice. State v. Preciose, 129 N.J. 451, 462–63 (1992). "When determining the propriety of conducting an evidentiary hearing, the PCR court should view the facts in the light most favorable to the defendant." State v. Jones, 219 N.J. 298, 311 (2014) (citing State v. Marshall, 148 N.J. 89, 158 (1997)); see also Preciose, 129 N.J. at 462–63. Based on the absence of

11

such a prima facie showing, Judge Borkowski did not err in declining to conduct an evidentiary hearing.

To the extent we have not addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12

A-0287-23