**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4242-17

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DEVON MAXWELL a/k/a
DEVIN MAXWELL, and
DAVON JACKSON,

    Defendant-Appellant.

_____

Submitted November 2, 2020 – Decided April 16, 2021

Before Judges Sabatino and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 15-04-0727 and 17-02-0458.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the briefs).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for the respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Devon Maxwell appeals from the March 9, 2018 judgment of conviction of several drug and weapons related crimes and one count of witness tampering entered after a jury trial, as well as the trial court's August 15, 2017 order denying his pretrial motion to suppress evidence discovered during the warrantless search of a third-party dwelling at which he was arrested. We reverse the order denying defendant's suppression motion. As a result, we vacate the judgment of conviction of the drug and weapons related crimes and remand for further proceedings, including consideration of the validity of the witness tampering conviction in light of our decision to suppress the seized evidence.

I.

The following facts are derived from the record. On November 21, 2014, Newark Detective Heriberto Figueroa and other officers intended to execute two arrest warrants for defendant. The warrants, which were issued the prior day, related to a charge of second-degree aggravated assault and

2

weapons offenses arising from a shooting on October 30, 2014, approximately three weeks earlier.[1]

Figueroa's investigation revealed several potential addresses for defendant. One of the addresses found during the investigation was the 12th Street address in Newark listed on the warrants. When the officers arrived at the 12th Street address, defendant was not present.

In an attempt to locate defendant, Figueroa showed a photograph of him to people he encountered in the neighborhood near the 12th Street address. A person who Figueroa had not previously met, after looking at the photograph, told the detective that she was familiar with defendant and that he was "staying in" the first-floor apartment at a nearby address on 11th Street. There is no evidence in the record with respect to the tipster's reliability, the extent of her familiarity with defendant, or the basis of her purported knowledge of his activities. Figueroa did not testify that the tipster expressed a belief that defendant would be present at the 11th Street address at the time she spoke to the detective.

The anonymous tip was the only information on which Figueroa and the other officers relied before heading to the 11th Street address. The officers

---

[1] These charges are not part of the present case.

took no steps to verify the accuracy of the tip. Notably, the 11th Street address is not among those uncovered as defendant's potential residence during the detective's prior investigation.

The building at the 11th Street address is a multi-unit residence. When the officers arrived, the door to the common area of the building was open. They entered the common area and knocked on the front door of the first-floor apartment. Codefendant Nijia Casillas opened the door. Figueroa identified himself, explained why he was there, and showed Casillas the arrest warrants and a photograph of defendant. There is no indication in the record that Figueroa explained to Casillas that the warrants did not list the 11th Street address or otherwise authorize the officers to enter those premises. Casillas stepped aside and pointed to the rear of the apartment.

The officers entered the apartment, which had two bedrooms. The doors to both bedrooms were open. They found defendant in pajamas on an air mattress in the west bedroom and arrested him. No contraband was discovered in the bedroom in which defendant was found.

Figueroa could see through the open door into the east bedroom across the hall from where defendant was arrested. The detective saw fifty-five vials of what he identified as cocaine on top of a dresser. He entered the east

bedroom and saw a rifle standing against a wall, as well as what he identified as eleven packets of heroin on the dresser next to the vials of cocaine.

Detective Johnny Faulkner, who had remained with defendant in the west bedroom, called out to Figueroa to get clothing for defendant from the closet in the east bedroom. Figueroa opened the closet in the east bedroom to retrieve defendant's clothing. He saw in the closet two loaded handguns, fourteen hollow-point bullets, and a safe. The officers later obtained a search warrant to open the safe, which contained 100 vials of cocaine and 500 packets of heroin.

A grand jury indicted defendant, charging him with: two counts of third-degree possession of heroin, N.J.S.A. 2C:35-10(a); two counts of third-degree possession of heroin with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); two counts of third-degree possession of cocaine, N.J.S.A. 2C:35-10(a); two counts of third-degree possession of cocaine with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); two counts of second-degree possession of a firearm during a drug distribution offense, N.J.S.A. 2C:39-4.1(a); third-degree witness tampering, N.J.S.A. 2C:28-5(a)(1); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d); and fourth-degree possession of prohibited bullets,

N.J.S.A. 2C:39-3(f). In a separate indictment, a grand jury charged defendant with three counts of fourth-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7(a).[2]

Prior to trial, defendant moved to suppress the evidence found in the 11th Street apartment. In support of his motion, defendant submitted a certification stating that he resided at the 12th Street address at the time of his arrest, and had never resided at the 11th Street address. He certified that he was visiting Casillas at the time he was arrested.

A hearing on the motion spanned three days. On the first day of the hearing, Figueroa was the sole witness and did not complete his testimony. When the hearing resumed on the second day, the matter had been assigned to a different judge who presided for the remaining days of the hearing. Figueroa appeared before the new judge on the second day of the hearing to complete his testimony. The second judge also heard the testimony of Diana McNeil, who is the mother of defendant's child, and Faulkner.

The officers testified consistent with the facts detailed above. McNeil testified that defendant lived with her and their child at the 12th Street address

---

[2]  A count charging defendant with second-degree unlicensed possession of a firearm, N.J.S.A. 2C:39-5(b), was dismissed before trial.

A-4242-17

at the time of the arrest.  She produced a lease for the 12th Street address on which both she and defendant are listed as tenants.  The lease's term included the date on which defendant was arrested.  She also produced a utility bill listing defendant as the customer for the 12th Street address for October, November, and December 2014.  Several police reports were admitted into evidence.[3]  The State offered no evidence that the 11th Street address was defendant's residence.

The second judge issued an oral opinion denying the motion.  She noted that in addition to having had the opportunity to observe Figueroa on the second day of the hearing, she reviewed the transcription of his testimony from the first day of the hearing.  The judge found Figueroa's testimony to be credible and consistent with the documentary evidence.  She also found Faulkner's testimony to be credible and determined that McNeal lacked credibility in some respects.

The judge applied our holding in State v. Miller, 342 N.J. Super. 474, 479 (App. Div. 2001), as the analytical framework for deciding defendant's

---

[3]  The exhibits admitted at the suppression hearing are not included in the appendix filed with this court, hindering our review of the trial court's findings.  See R. 2:6-1(a)(1) (requiring appellant to include in the appendix "such . . . parts of the record . . . as are essential to the proper consideration of the issues . . .").

suppression motion:  "[I]n the absence of consent or exigency, an arrest warrant is not lawfully executed in a dwelling unless the officers executing the warrant have objectively reasonable bases for believing that the person named in the warrant both resides in the dwelling and is within the dwelling at the time."  The judge found that the officers did not obtain the valid consent of Casillas to enter the apartment, as her authority and control over the dwelling was not established.[4]  In addition, the court concluded that no exigent circumstances excusing the warrant requirement existed.

The judge found, however, that the officers had an objectively reasonable basis to believe defendant resided at the 11th Street residence and would be present at the time they went to that location.  The judge reasoned that because Figueroa's investigation revealed two addresses for defendant, including the 12th Street address, that "proved negative," it was reasonable for the detective to believe defendant had moved and was living elsewhere. This belief, coupled with what the court described as an anonymous tip that defendant "had moved an[d] now resided at the" 11th Street address, was

---

[4]  At the suppression hearing, the State admitted that at most it could prove only that Casillas gave implied consent to the officers entering the residence, which it conceded was insufficient to justify a warrantless entry in the context of a search for evidence.  The State argued, however, that implied consent might be sufficient in the context of an arrest warrant.

A-4242-17

sufficient, the court found, to support an objectively reasonable belief that defendant resided at the 11th Street address. Finally, the court concluded that Casillas's pointing to the rear of the apartment "confirmed" the detective's belief defendant was present in the apartment. Having concluded that the officers' warrantless entry into the apartment was constitutional, the court found that the evidence the officers saw was in their plain view and not subject to suppression.

Defendant steadfastly denied that he resided at the 11th Street apartment and denied possession of the contraband found in the east bedroom. At trial, Casillas testified that a third party was paying the rent for the 11th Street apartment and that she had resided there for between two weeks and a month at the invitation of defendant. She testified that at least three men, "Whack," "Doobie," and "Mookie," had visited the apartment while she was there and some of those men had keys to the residence. She did not testify that defendant had a key to the residence. Finally, she testified that she received several letters from defendant imploring her to testify at trial that the contraband did not belong to him. One letter included a written statement defendant asked her to sign and have notarized. Another instructed Casillas as to how she should testify at the suppression hearing.

9

Figueroa testified that all of the contraband was recovered from "[t]he room belonging to Mr. Maxwell." Defendant's counsel objected to what he characterized as the detective's lay witness opinion testimony. The court overruled the objection, concluding that the officer's testimony was not "an opinion as to the ultimate issue" before the jury. In later testimony, Figueroa again stated the bedroom in which the contraband was found "belonged to Mr. Maxwell" and that the bedroom in which defendant was arrested "belonged to Ms. Casillas." The trial court granted a second objection by defense counsel and instructed the detective to use different language to distinguish between the two bedrooms.

A jury convicted defendant of all counts of the first indictment. The trial court sentenced defendant to an aggregate seven-year term of imprisonment, with a three-and-a-half-year period of parole ineligibility for the possession of a weapon during a drug distribution offense convictions. For the possession of heroin and cocaine with intent to distribute convictions, the court sentenced defendant to a consecutive aggregate four-year term of imprisonment. In addition, the court sentenced defendant to a consecutive

10

four-year term of imprisonment for the witness tampering conviction. The remaining convictions were either merged or generated concurrent sentences.[5]

This appeal follows. Defendant raises the following arguments.

> POINT I
>
> AN OFFICER VIOLATED THE LAY OPINION RULE, N.J.R.E. 701, WHEN THE COURT PERMITTED HIM TO OPINE, OVER DEFENSE COUNSEL'S TIMELY OBJECTION, THAT THE DEFENDANT WAS IN CONSTRUCTIVE POSSESSION OF THE CONTRABAND.
>
> POINT II
>
> THE COURT ERRED BY REFUSING COUNSEL'S REQUEST TO INSTRUCT THE JURY ON THE "MERE PRESENCE" DEFENSE AGAINST THE STATE'S THEORY OF CONSTRUCTIVE POSSESSION.
>
> POINT III
>
> THE COURT SHOULD EITHER REVERSE THE DENIAL OF THE MOTION TO SUPPRESS, OR REMAND FOR A NEW SUPPRESSION HEARING.

## II.

### A.

---

[5] After the jury verdict, defendant entered a guilty plea to the certain persons charges, contingent on the jury verdict not being reversed on appeal.

A-4242-17

We begin with defendant's appeal of the pretrial order denying his motion to suppress. "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (quotations omitted). The "findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (citation omitted). "An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015).

The Fourth Amendment, and Article I, Paragraph 7 of the New Jersey Constitution, protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "'[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Payton v. New York, 445 U.S. 573, 585-86 (1980) (quoting United States v. United States Dist. Court, 407 U.S. 297, 313 (1972)). "Under our constitutional jurisprudence, when it is practicable to do so, the police are

generally required to secure a warrant before conducting a search of certain places . . . ." State v. Hathaway, 222 N.J. 453, 468 (2015).

"A search conducted without a warrant is presumptively invalid, and the burden falls on the State to demonstrate that the search is justified by one of the 'few specifically established and well-delineated exceptions' to the warrant requirement." State v. Frankel, 179 N.J. 586, 598 (2004) (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978)).

The trial court found that Figueroa provided credible testimony at the suppression hearing with respect to the events that transpired prior to the warrantless entry into the apartment at which defendant was arrested. We see no basis in the record to disturb that determination. We are not persuaded by defendant's argument that the fact findings arising from the suppression hearing are fatally flawed because the judge who made those findings did not preside at the first day of Figueroa's testimony. Figueroa testified before the judge on the second day of the hearing. He provided testimony on the second day that covered some of the facts he addressed in the first hearing. The judge had an opportunity to gauge first-hand the detective's credibility and compared his testimony with the documents admitted as evidence. In addition, the judge reviewed the transcripts of the first day of testimony.

A-4242-17

We note, as well, that the events preceding the officers' entry into the residence at which defendant was arrested are largely undisputed. The primary point of disagreement between the parties is whether those events were sufficient to form an objectively reasonable belief defendant resided in the 11th Street apartment and would be present when the officers entered. In light of these circumstances, the manner in which the suppression hearing was conducted was sound.

We agree, however, with defendant's argument that our holding in Miller requires reversal of the trial court's denial of his suppression motion. We have consistently applied the standard announced in Miller to determine the validity of a warrantless entry into a residence to effectuate an arrest warrant. As the trial court correctly noted, we held in Miller that "in the absence of consent or exigency, an arrest warrant is not lawfully executed in a dwelling unless the officers executing the warrant have objectively reasonable bases for believing that the person named in the warrant both resides in the dwelling and is within the dwelling at the time." State v. Cleveland, 371 N.J. Super. 286, 299 (App. Div. 2004) (quoting Miller, 342 N.J. Super. at 479).

In Miller, a warrant had been issued for Miller's arrest. The address on the warrant proved not to be his home. Officers, suspecting that Miller could be found at what they believed was his girlfriend's residence, went to that address to look for him. 342 N.J. Super. at 481. The mother of Miller's girlfriend was there and told officers that her daughter and Miller lived at another address and that they were there at that time. Ibid. The officers proceeded immediately to that address. The girlfriend answered the door and stated that Miller was not in the home. The officers entered the residence despite not having obtained consent to do so. Ibid. They discovered Miller in the residence and found incriminating evidence while effectuating his arrest. The trial court suppressed the evidence, finding that the residence at which Miller was arrested was not his home, and that the officers' warrantless entry was not lawful. Id. at 483.

We affirmed, holding that a statement that a subject of a warrant resides at a particular residence "unsupported by observation, investigation or other inquiry" is, standing alone, insufficient to support an objectively reasonable belief to enter that residence to effectuate an arrest on the warrant. Id. at 497. As we explained, "[t]he officers in this matter did nothing to confirm independently the snippet of opinion they had received from [the girlfriend's]

15

mother," did not suggest that they anticipated Miller's departure from the premises, and offered no basis to believe he was present in the home at the time of entry. Id. at 500.

Here, Figueroa, after receiving a tip from an anonymous source that defendant was "staying in" the 11th Street apartment, took no steps to verify the accuracy of that information. Notably, his prior investigation revealed a number of potential residential addresses for defendant, but not the 11th Street location. The detective provided no testimony with respect to the reliability of the tipster, her relationship to and knowledge of defendant, or the basis of her purported knowledge of his whereabouts. As in Miller, this information was a mere "snippet of opinion." Ibid.

We also note that although the trial court found that the tipster informed the officer that defendant had moved from the 12th Street address to the 11th Street address, there is no evidence in the record supporting that conclusion. According to Figueroa's testimony, the tipster told him defendant was "staying in" the 11th Street apartment, which is an expresssion more suggestive of a temporary visit than a change of residence.

In addition, although the trial court concluded that the detective had an objectively reasonable belief defendant no longer resided at the 12th Street

address, the detective's testimony was merely that defendant was <u>not present</u> at that residence when the officers arrived. Figueroa did not testify that his observations at the 12th Street residence suggested defendant had abandoned that residence for another dwelling. To the contrary, defendant produced evidence at the suppression hearing establishing that on November 21, 2014, he was listed as a tenant on the lease for the 12th Street residence and as the customer for the utilities at that home. The mother of his child testified that defendant lived with her at the 12th Street home on the date in question. The State introduced no evidence to the contrary. Moreover, there is no evidence in the record that defendant had established a residence at the 11th Street apartment, which was rented by a third party. At best, the record suggests defendant had access to that apartment.

We are not suggesting that the officers acted inappropriately when they went to the 11th Street apartment to look for defendant. There is no legal impediment to the officers attempting to find the subject of an arrest warrant anywhere they suspect he might be present. However, to enter a residence that is not listed on the arrest warrant, the officers must either: (1) obtain valid consent to enter, <u>State v. Johnson</u>, 193 N.J. 528, 552 (2008); (2) act under exigent circumstances, <u>State v. Moore</u>, 181 N.J. 40, 45 (2004); or (3)

17

establish an objectively reasonable belief that the dwelling is the residence of the subject of the warrant and that he is present.

Here, as to the first two possibile justifications, the trial court found that the officers did not obtain valid consent to enter the 11th Street apartment and that exigent circustances were not present. Those conclusions are well supported by the record. And, as explained above, we disagree with the trial court's conclusion that the officers had an objectively reasonble basis to believe the 11th Street apartment was defendant's residence. While Casillas, by stepping back and pointing to the rear of the apartment, may have suggested defendant was then present in the dwelling, her actions cannot reasonably be interpreted as evidencing he was a resident of the apartment.

Because the officers' warrantless entry into the 11th Street residence was unlawful, the contraband discovered in plain view during defendant's arrest must be suppressed. It is our understanding that defendant's convictions of the counts of the indictment that are drug and weapons related are based only on the contraband found in the 11th Street apartment at the time of his arrest. Based on this understanding of the record, we vacate those convictions. We leave to the trial court, in the first instance, to determine if defendant's conviction of witness tampering, which appears to have been

18

based on evidence obtained after defendant's arrest, is affected by our decision on the suppression motion.

B.

For the sake of completeness, we briefly address defendant's other arguments. We agree with the State's argument that Figueroa did not expressly testify that defendant was in possession of the contraband found in the 11th Street apartment. His characterization of the bedrooms as "belonging" to either defendant or Casillas, based on the clothing and other non-contraband he observed in those rooms, approached, but did not cross, the line into impressible lay opinion testimony on the central issue before the jury. N.J.R.E. 701; State v. McLean, 205 N.J. 438, 456 (2011). The detective's testimony was an inartful method of distinguishing between the two bedrooms. He did not offer an opinion with respect to whether defendant was in actual or constructive possession of the contraband found in the east bedroom. We see no abuse of discretion in the trial court's decisions on defendant's evidentiary objections. State v. Prall, 231 N.J. 567, 580 (2018).

With respect to defendant's jury charge arguments, the trial court gave the jury the model jury instructions on possession. Those instructions did not include an instruction on "mere presence," as requested by defendant. See

A-4242-17

Model Jury Charges (Criminal), "Possession" (N.J.S.A. 2C:2-1) (June 2014). "When a jury instruction follows the model jury charge, although not determinative, it is a persuasive argument in favor of the charge as delivered." State v. Whitaker, 402 N.J. Super. 495, 513-14 (App. Div. 2008).

However, seven months before the trial, the Court held in State v. Randolph, 228 N.J. 566, 592 (2017), that while the mere presence instruction was not in the model jury charge on possession, "[n]o constraint barred the trial court from giving the 'mere presence' charge, and the better course would have been to give the charge to disabuse the jury of any possible notion that a conviction could be based solely on defendant's presence in the building." Ibid.[6]

The judge, however, instructed the jury on the definition of possession, explaining that defendant could not be found guilty of the possessory offenses unless he had "conscious, knowing possession, either actual or constructive." The instruction defined and explained both actual and constructive possession and the judge stated "[t]he State must prove beyond a reasonable doubt that a possessor acted knowingly in possessing an item." When viewed in its

---

[6] In 2018, in response to Randolph, the Model Charge Committee tailored the charge on constructive possession to include the "mere presence" language.

entirety, the court's charge on possession did not permit the jury to find defendant guilty based on his mere presence in the apartment. As the Court concluded in Randolph, "giving the charge would have done no harm and possibly would have been of some benefit," but the absence of the mere presence charge did not deny the defendant a fair trial. 228 N.J. at 593. We conclude the error was not "clearly capable of producing an unjust result." Id. at 592 (citing R. 2:10-2).

## III.

The August 15, 2017 order denying defendant's motion to suppress is reversed. The matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION