# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0122-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.A.W.,[1]

     Defendant-Appellant.

_____

Submitted April 22, 2026 – Decided June 15, 2026

Before Judges Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-11-3281.

Jennifer N. Sellitti, Public Defender, attorney for appellant (John J. Bannan, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

---

[1] We use initials to protect the privacy of the parties. R. 1:38-3(e)(9).

Defendant J.A.W. appeals the denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. For the reasons expressed by the PCR court in its comprehensive oral decision, we affirm.

I.

We rely on the facts and procedural history set forth in our previously issued unpublished opinion, State v. J.A.W., No. A-5255-17 (App. Div. Nov. 12, 2020):

> In 2008, defendant lived with his wife, T.W.[2] At that time, T.W.'s then thirteen-year old brother, T.S., lived with his mother near the home of defendant and T.W. Because the victim's biological father was absent from his life, T.S. regarded defendant as a father figure.
>
> From September 2008 through June 2009, T.S. often visited his sister's home . . . to "hang out" with defendant and play video games. It was during this time period that defendant showed pornography to T.S. and discussed sex with him. Defendant asked the victim if he "liked what [he] saw," and if T.S. would engage in any of the depicted sexual acts with defendant.
>
> During those ten months, T.S. performed fellatio on defendant approximately twenty times. Defendant also attempted to penetrate the victim's anus with his penis twice but T.S. "stopped it." At some point, T.S.

---

[2] Throughout this opinion, we use "T.S." to refer to the victim; "T.W." to refer to the victim's sister and defendant's wife; "M.B." to refer to the "fresh complaint" witness and the victim's friend; and "M.L." to refer to defendant's former employer.

A-0122-24

stated he no longer wanted to engage in sexual activities with defendant. T.S. "felt . . . [he] wasn't able to live the life that [he] should have lived at that age. And [he] wanted to hang out with [his] friends more, and [he] wanted to just be a kid."

Subsequent to defendant's sexual assaults of the victim, T.S. moved from South Jersey to Philadelphia. T.S. never disclosed defendant's sexual assaults until he was twenty-years old. In the spring of 2015, T.S. told his close friend, M.B., about defendant's sexual assaults when T.S. was thirteen years old. M.B. was "shocked" to learn of defendant sexually assaulting T.S. and expressed support for his long-time friend. According to T.S., he did not intend to disclose defendant's sexual assaults, but it "just . . . came out" while T.S. was talking to M.B.

After he told M.B. about defendant's sexual assaults, T.S. also disclosed the information to his mother and sisters, including defendant's wife. When defendant learned T.S. intended to report the sexual assaults to the police, defendant text messaged T.S. and asked if T.S. would speak to him. T.S. agreed to speak with defendant the next day. Defendant then texted the following to T.S.:

> I'm very sorry, [T.S.]. I was very wrong. I will seek help . . . . I just want everyone to suffer [sic] because I made bad decisions. Again, I'm sorry. I wish I could change it. I wasn't thinking of how that would have affected you. [T.S.], I'm begging for your forgiveness. What I did was wrong. I never meant to hurt you. I need to take care of [T.W. and children], and I can't do that behind bars.

3

A-0122-24

I have no excuse for what I've done to you, and if I could rewind I would. I understand why you came forward with all this[.] Trying to protect people you love from me is very courageous. I promise you I will seek help and never do anything like that again. I didn't think I was harming you when it was happening. I was wrong. I'm very sorry.

On the morning of April 3, 2015, T.S. gave a statement to the police, and the police took defendant into custody that afternoon.

Prior to being arrested, defendant contacted his then-employer, M.L. In a text message, defendant told M.L. he would likely be arrested, and asked if M.L. would provide bail money. M.L. asked defendant to telephone him. When the two spoke on the telephone, defendant explained "he was abused as a child and [did] the same" to a family member. M.L. declined to assist defendant and immediately terminated defendant's employment.

According to T.W., defendant had a close relationship with T.S. and served as a father figure to him. T.S. was frequently at their house, and defendant would take care of T.S. when T.W. or her mother were not home. T.W. learned about defendant sexually assaulting T.S. from her mother. When T.W. confronted defendant, he admitted the allegations were true. Defendant told T.W. "he had [T.S.] give him a blow job . . . a few times" and tried anal sex. T.W. said defendant left his cell phone at the house on the day of his arrest. Initially, T.W. testified she did not use defendant's cell phone that day. However, when the State recalled T.W. to the stand during the trial, she testified she may have used defendant's phone while he

4

was in custody. T.W. explained she was uncertain whether she used defendant's cell phone that day because she was in a state of panic and seeking legal counsel for defendant.

Detective Christopher Robinson of the Camden County Prosecutor's Office, an investigator with the High-Tech Crimes Unit, specialized in forensically extracting data from cell phones. Detective Robinson reviewed the web browsing history and text messages on defendant's cell phone. A search of defendant's cell phone revealed text messages between defendant and T.S. and between defendant and M.L. In addition, the detective found hundreds of visits to pornographic websites between January and April 2015. Defendant's cell phone also revealed searches for "New Jersey state prison," "[c]hild molester jail time," "[n]on-aggravated child molester jail time," and "New Jersey child molester plea deal." These searches were conducted on the day of defendant's arrest. Many of the searches were during the evening hours when defendant was without his phone and in police custody. Detective Robinson explained he used an older version of the data extraction software, which ran on universal coordinated time. Thus, when he examined defendant's cell phone, to reflect the real time of the searches and text messages, the detective had to subtract four hours.

A Camden County grand jury indicted defendant on charges of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2)(a) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4) (count two); four counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (counts three, six, eight, and ten); second-degree attempted aggravated sexual assault N.J.S.A. 2C:5-1(a)(1) and 2C:14-2(a)(2)(a) (count four); third-degree attempted sexual assault, N.J.S.A. 2C:5-1(a)(1) and 2C:14-2(c)(4) (count five);

5

third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (count seven); and third-degree obscenity for persons under age eighteen, N.J.S.A. 2C:34-[3](b)(2) (count nine).

[J.A.W., slip op. at 2-7 (all but last alteration and all but first omission in original) (footnote omitted).]

A jury found defendant guilty on all counts. Id. at 8. The trial court sentenced defendant to

sixteen years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on count one for aggravated sexual assault, consecutive to counts three and four; eight years on count three for endangering the welfare of a child, consecutive to counts one and four; eight years subject to NERA, on count four for attempted aggravated sexual assault, consecutive to counts one and three; eight years on count six for endangering the welfare of a child, concurrent to the other counts; eight years on count eight for endangering the welfare of a child, concurrent to the other counts; and eight years on count nine for endangering the welfare of a child, concurrent to the other counts. Defendant's aggregate sentence was thirty-two years in prison with a parole ineligibility period of twenty years, four months, and one day.

[Ibid.]

Defendant directly appealed his sentence, and we affirmed his convictions in all respects but remanded for resentencing. Id. at 2. The Supreme Court denied defendant's petition for certification. State v. J.A.W., 245 N.J. 249 (2021). The trial court resentenced defendant, and we affirmed the sentence

6

imposed but remanded "for entry of a corrected judgment of conviction [(JOC)] to include the proper number of prior service credits." State v. J.A.W., No. A-0499-22 (App. Div. Sep. 19, 2023) (order at ¶ 3). The Supreme Court denied defendant's petition for certification. State v. J.A.W., 256 N.J. 76 (2023). The trial court amended defendant's JOC accordingly.

On April 26, 2023, defendant filed a self-represented petition for PCR centered on claims of ineffective assistance of trial counsel. Defense counsel filed a supporting brief in February 2024, and subsequently filed an amended PCR and supplemental certification of defendant. On July 31, 2024, the PCR court heard arguments.

In an oral decision that day, the PCR court denied defendant's petition without an evidentiary hearing. The court determined many of defendant's claims were either factually incorrect or procedurally barred as they had already been adjudicated and rejected by us on direct appeal. The court emphasized that, contrary to defendant's assertions, trial counsel did, in fact, argue for mitigating factors at sentencing, objected to the State reopening its case, and filed motions that were denied. The court also found defendant's assertions lacked supporting evidence and amounted to "bald assertions" not warranting an evidentiary hearing.

The court applied the <u>Strickland</u>[3] standard and concluded defendant did not demonstrate a prima facie showing of ineffective assistance of counsel. The court noted that defendant failed to show how any alleged deficiencies by trial counsel would have changed the outcome of the trial, especially given the strong evidence presented by the State, including admissions, text messages, and witness testimony. The court further recognized counsel's decisions regarding trial strategy are afforded great deference and defendant did not overcome the presumption that his attorney's actions were reasonable. As a result, the court denied defendant's petition.

Defendant appeals, raising the following arguments:

POINT I

BECAUSE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR PCR.

(A) Legal Standards Governing Applications For Post-Conviction Relief.

(B) Trial Counsel was Ineffective for Failing to Provide . . . and Review Full Discovery with Defendant, and to Develop a Trial Strategy.

---

[3] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Our Supreme Court adopted this standard in <u>State v. Fritz</u>, 105 N.J. 42, 44 (1987).

A-0122-24

(C) Trial Counsel was Ineffective in Failing to Investigate and File the Appropriate Pre-trial Motions and Failing to Communicate with . . . Defendant.

(D) Trial Counsel was Ineffective by Failing to Request a R[ule] 104 Hearing When the State Sought to Reopen its Case.

(E) Trial Counsel was Ineffective in Failing to Argue Mitigating Factors at the Time of Sentencing or Argue for a Lesser Sentence.

(F) Trial Counsel was Ineffective in Failing to Argue Against the Imposition of a Consecutive Sentencing Term.

(G) Trial Counsel was Ineffective in Failing to Argue in Opposition to the Court's Reliance on Aggravating Factors One, Three[,] and Nine at Sentencing.

(H) Trial Counsel was Ineffective for Failing to Request that the Judge Permit . . . Defendant to Address the Court before Sentence was Imposed.

(I) Trial Counsel was Ineffective for Failing to Inform . . . Defendant of the Sentencing Consequences and the Appropriate Scope of the Avenel Evaluation.

POINT II

IN THE ALTERNATIVE, BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, THE PCR COURT ERRED IN DENYING AN EVIDENTIARY HEARING.

9

POINT III

THE CLAIMS BY THE DEFENDANT ARE NOT
PROCEDURALLY BARRED.

(A) Defendant's Claims are Not Barred by R[ule] 3:22-
4.

(B) Defendant's Claims are Not Barred by R[ule] 3:22-
5.

II.

Pursuant to Rule 3:22-4(a), "[a]ny ground for relief not raised in the proceedings resulting in the conviction . . . or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule."  "Post-conviction relief is neither a substitute for direct appeal, R[ule] 3:22-3, nor an opportunity to relitigate cases already decided on the merits, R[ule]3:22-5." State v. Preciose, 129 N.J. 451, 459 (1992).  A defendant may be precluded from PCR under Rule 3:22-4 if he "could have, but did not, raise the claim in a prior proceeding," unless he satisfies one of the Rule's enumerated exceptions.  Ibid.

Pursuant to Rule 3:22-5, "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceeding resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings." The prior adjudication of an issue bars a subsequent post-conviction hearing on

the same basis.  State v. Afanador, 151 N.J. 41, 51 (1997).  We review de novo a trial court's conclusion a defendant's PCR is procedurally barred.  State v. Harris, 181 N.J. 391, 419 (2004).

On review of the record, we are satisfied the PCR court did not err in finding defendant's claims were procedurally barred under Rules 3:22-4 and 3:22-5.  Defendant raised the same arguments and issues identified and rejected in his direct appeal.  J.A.W., No. A-5255-17 (slip op. at 9-11).  As the PCR court noted,

> defendant's claim of ineffective assistance of counsel in regard to points 1C, D, E, F, G[,] and H of his petition for [PCR] are factually either incorrect or are the same or substantially equivalent to the issues adjudicated in his appeal . . . .  This is what the procedural bar of Rule 3:22-5 seeks to prevent.
>
> Moreover, to the extent that any of defendant's ineffective assistance of counsel claims regarding sentencing were not raised, they are procedurally barred under [Rule] 3:22-4 as any such sentencing claims should have and could have been raised on [direct] appeal.

We previously considered and rejected defendant's claims on direct appeal.  See J.A.W., No. A-5255-17 (slip op. at 27).  Because defendant already brought or could have brought his current claims on direct appeal, we discern no error in the court's conclusion barring his PCR.

11

For the sake of completeness, we briefly address the merits. To prove ineffective assistance, a defendant must first demonstrate that counsel's performance was deficient. Strickland, 466 U.S. at 687. Performance is deficient when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. "Judicial scrutiny of counsel's performance must be highly deferential," and a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

To show prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A defendant must present more than bald assertions or conclusory statements. State v. Porter, 216 N.J. 343, 355 (2013). Rather, there must be a proffer or demonstration that, absent counsel's deficient performance, the outcome probably would have been different. Strickland, 466 U.S. at 694.

"Although we must defer to the trial court respecting the factual findings underpinning its determination, we owe no deference to the determination itself." State v. Cleveland, 371 N.J. Super. 286, 295 (App. Div. 2004).

12

"Whether the facts found by the trial court are sufficient to satisfy the applicable legal standard is a question of law subject to plenary review on appeal." Ibid.

Based on our review of the record, we are satisfied the PCR court properly determined defendant did not establish a prima facie case of ineffective assistance of counsel sufficient to warrant an evidentiary hearing. We discern no error in the PCR court's determination that defendant's claims are, at best, bald assertions, unsupported by affidavits, certifications, or other competent evidence.

To the extent we have not addressed defendant's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13                                                                      A-0122-24